UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
===============================================================

CHRISTOPHER REYNOLDS,

        Plaintiff,

-v.-                                  1:11-cv-00778  NPM

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.
-------------------------------------------------------------------------------------------------
APPEARANCES:                    OF COUNSEL:

Office of Peter M. Margolius      Peter M. Margolius, Esq.
Attorney for Plaintiff
7 Howard Street
Catskill, NY 12414

Social Security Administration     Christopher J. Brackett, Esq.
Office of Regional General Counsel  Sergei Aden, Esq.
Region II
26 Federal Plaza - Room 3904
New York, NY 10278

NEAL P. McCURN, Senior District Court Judge

## MEMORANDUM - DECISION AND ORDER

      This action was filed by plaintiff Christopher Reynolds ("plaintiff")

pursuant to 42 U.S.C. § 405(g) to review the final determination of the

Commissioner of Social Security ("Commissioner"), who denied his application

for Supplemental Security Income benefits ("SSI") .  Currently before the court is

plaintiff's motion for judgment on the pleadings (Doc. No. 11) seeking reversal of

the Commissioner's decision with a finding of disability, or in the alternative, an order of remand for a new hearing. Also before the court is the Commissioner's motion for judgment on the pleadings (Doc. No. 12) seeking affirmation of the Commissioner's findings. For the reasons set forth below, the Commissioner's motion is granted, and plaintiff's motion is denied.

## I.   Procedural History and Facts

For reasons unknown, plaintiff did not submit a statement of facts in his brief. The following facts are taken from the Commissioner's brief, which incorporates by reference the May 24, 2010 decision of the Administrative Law Judge Terence Farrell ("the ALJ"). The Commissioner also provides additional evidence from the record in his brief. The court has completed a comprehensive review of the record and will add additional relevant facts from the record as it deems necessary.

### A.   Procedural History

On September 22, 2008, plaintiff filed an application for SSI. Tr. 111–14. This application was denied at the initial determination level on January 12, 2009. Tr. 51–56. On February 9, 2009, plaintiff requested a hearing before an ALJ. Tr. 59. On April 29, 2010, plaintiff appeared with his attorney before the ALJ. Tr. 20–50. After considering the documentary evidence, plaintiff's testimony, and the

testimony of a vocational expert, the ALJ issued a decision dated May 24, 2010, in which he denied plaintiff's claim. Tr. 8–19.  On May 19, 2011, the Appeals Council denied plaintiff's request for review, making the ALJ's decision the Commissioner's final decision for judicial review. Tr. 1–4. This action followed.

B.    Facts

Plaintiff was born on June 8, 1989, and was nineteen years old on the date his application for SSI was filed.  Plaintiff's medical history reveals that he had one kidney removed on November 25, 1989 (Tr. 343), secondary to kidney disease, and he had foot surgery for a congenital club foot when he was approximately ten months old. Tr. 15.  Follow up visits to plaintiff's pediatric urologists and the Arizona Kidney Disease and Hypertension Center indicate polycystic kidney disease and compensatory hypertrophy of the remaining kidney, but no ongoing problems with the functioning of the remaining kidney. See, e.g., Tr. 355-58; 365-75.

Plaintiff has a high school education, and some college.  Plaintiff's school records indicated that he was physically able to participate in activities and that there were no physical or motor needs to be addressed.   School records indicated that plaintiff had an Individualized Education Program ("IEP") in place during the 2005/2006 school year, and was receiving some assistance in math and writing,

3

and was classified with "other health impairment."  Review of available school

records indicate that despite being socially self-conscious, plaintiff had friends in

school and had grown in his ability to share personal interests and hobbies. Tr. 15.

Plaintiff has no past relevant work, having held only one job as a ticket taker for a

period of one or two days.

Plaintiff's learning impairments qualified him for assistance from the New

York State Education Department's  Office of Vocational and Educational

Services for Individuals with Disabilities ("VESID").  In a case note dated July 14,

2008, plaintiff's impairments were listed as general social anxiety and avoidant

personality, and autosomal dominant polycystic kidney disease. Tr. 256, 259.  He

was found to be "eligible for vocational rehabilitation services from VESID based

on your disability, which affects your ability to work, and because you will need

help to get or keep a job." Tr. 254.  Plaintiff was found to have difficulty

communicating through writing, and difficulty writing legibly.  Plaintiff had

problems with social interaction, due to behavior depicted as withdrawn, which

resulted in plaintiff feeling awkward and unpleasant in social situations.  Plaintiff

also had problems with work skills,  including difficulties generating strategies to

solve a problem, which resulted in plaintiff requiring specialized instruction

methods, extended learning periods, assistive technology and other

4

accommodations. Tr.256.  Plaintiff was also found to have problems with fine

motor coordination; problems with initiative; inability to tolerate environmental

conditions, needing to avoid stressful situations; and problems with attention, with

an inability to stay on task for appropriate periods of time. Tr. 257.  It was

determined that plaintiff would require vocational rehabilitation services for a

period of six months or more.

The VESID case note indicated that plaintiff was attending Columbia

Greene Community College ("CGCC"), majoring in Social Science at his own

expense.  In the previous semester, plaintiff reported that he took two classes in

history and obtained an A and an A-.  It was noted that VESID could not assist

with plaintiff's college because his studies did not have a vocational goal.  Tr.

259-63.  A case note dated August 19, 2008 indicated that plaintiff was being

referred to the Mental Health Association ("MHA") of Columbia-Greene Counties

for supported employment services. Tr. 265.  The case note stated that plaintiff

and VESID were expecting job coaching services to help plaintiff obtain and keep

a job of his liking. Tr. 268.  Plaintiff was encouraged to obtain a driver's permit in

order for VESID to be able to assist him in obtaining driver training. Tr. 269.

Despite the proffered services available to him, however, on September 22, 2008,

plaintiff filed an application for SSI. Tr. 111–14.  Plaintiff moved to Arizona in

early 2009 with his grandmother, and continues to reside there.  Tr. 18; 373.

On January 12, 2009, the Social Security Administration ("SSA") mailed plaintiff a Notice of Disapproved Claim, stating that "[w]e have determined that your condition is not severe enough to keep you from working.  We considered the medical and other information, your age, education, training, and work experience in determining how your condition affects your ability to work."  The letter continued, stating that "[y]ou said you were disabled because of one kidney, slow learner and mental delays.  The medical evidence shows that you have status post right kidney removal, affective disorder, and anxiety related disorder.  The reports did not show any conditions of a nature that would prevent you from working." Tr. 56.  The SSA determined that "[w]e realize that at present you are unable to perform certain kinds of work.  But based on your age of 19 years, your education of 12 years, and your experience, you can perform medium work (for example, you could lift a maximum of 50 lbs., with frequent lifting or carrying of objects weighing up to 25 lbs) a job in which you would have simple tasks."  Id.  Plaintiff appealed the decision, and  a hearing was held on April 29, 2010 in front of the ALJ and Esperanza DiStefano, who testified as a vocational expert ("the VE"). Tr. 44–50.

## II.     Discussion

### A.      Contentions

Plaintiff argues that the ALJ erred by determining that the VE's testimony was consistent with the information contained in the Dictionary of Occupational Titles.  Plaintiff argues that the VE's testimony conflicts with the DOT, and that three of the four jobs she listed were precluded by plaintiff's residual functional capacity under the DOT's description.  The Commissioner  asserts that the claim is without merit, but assuming <u>arguendo</u> that there was a conflict between the VE's testimony and the DOT, failing to resolve it was harmless error.

### B.      Standard of Review

This court does not review a final decision of the Commissioner <u>de novo</u>, but instead "must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." <u>Butts v. Barnhart</u>, 388 F.3d 377, 384 (2d Cir. 2004) (internal citations omitted). <u>See also</u> <u>Halloran v. Barnhart</u>, 362 F.3d 28, 31 (2d Cir. 2004); <u>Balsamo v. Chater</u>, 142 F.3d 75, 79 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." <u>Halloran</u>, 362 F.3d at 31 (<u>quoting</u> <u>Richardson v. Perales</u>, 402 U.S. 389, 401, 91 S.Ct. 1420 (1971)). "An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision." Gravel v. Barnhart, 360 F.Supp.2d 442, 444-45 (N.D.N.Y. 2005) (citing Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984)).   When reviewing a determination by the Commissioner, a district court, in its discretion, "shall have the power to enter, upon the pleadings and transcript of record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### C.   Disability Defined

An individual is considered disabled for purposes of his or her eligibility for Social Security Disability if he or she is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

The Commissioner may deem an individual applicant for Social Security Disability to be disabled

> only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age,

> education, and work experience, engage in any other
> kind of substantial gainful work which exists in the
> national economy, regardless of whether such work
> exists in the immediate area in which he lives, or whether
> a specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

42 U.S.C. § 423(d)(2)(A).

Social Security Administration regulations set forth a five-step sequential evaluation process, by which the Commissioner is to determine whether an applicant for Social Security Disability is disabled pursuant to the aforementioned statutory definition.  See 20 C.F.R. § 404.1520.  The Second Circuit Court of Appeals summarizes this process as follows:

> The first step of this process requires the Secretary to
> determine whether the claimant is presently employed. If
> the claimant is not employed, the Secretary then
> determines whether the claimant has a "severe
> impairment" that limits [his] capacity to work. If the
> claimant has such an impairment, the Secretary next
> considers whether the claimant has an impairment that is
> listed in Appendix 1 of the regulations. When the
> claimant has such an impairment, the Secretary will find
> the claimant disabled. However, if the claimant does not
> have a listed impairment, the Secretary must determine,
> under the fourth step, whether the claimant possesses the
> residual functional capacity[1] to perform [his] past

---

[1]	Residual functional capacity ("RFC") refers to what a claimant can still do in a work setting despite any physical and/or mental limitations caused by his or her impairments and any related symptoms, such as pain.  An ALJ must assess the patient's RFC based on all the relevant evidence in the case record. See 20 C.F.R. § 404.1545 (a)(1).

> relevant work. Finally, if the claimant is unable to
> perform [his] past relevant work, the Secretary
> determines whether the claimant is capable of
> performing any other work. If the claimant satisfies [his]
> burden of proving the requirements in the first four steps,
> the burden then shifts to the Secretary to prove in the
> fifth step that the claimant is capable of working.

Brown v. Apfel, 174 F.3d 59, 62 (2d Cir. 1999) (quoting Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996)).

The fifth step "requires the [ALJ] to consider the so-called vocational factors (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy." Quezada v. Barnhart, 2007 WL 1723615 (S.D.N.Y. 2007) (internal quotations omitted).

A person is deemed disabled if he or she is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. Substantial work activity is defined as "work activity that involves doing significant physical or mental activities.  Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less

responsibility than when you worked before."  Gainful work activity is defined as "work activity that you do for pay or profit.  Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized." 20 C.F.R. § 404.1572(a-b) (West 2009).

### C.    Analysis

In the case at bar, the ALJ applied the a five-step sequential evaluation process and determined at step one that plaintiff has not engaged in any substantial gainful activity since September 22, 2008, the application date (20 CFR 416.971 et seq.).  At step two, the ALJ found that plaintiff had the following severe impairments: social anxiety disorder, depressive disorder, learning disorder, autosomal dominant polycystic kidney disease (ADPKD), status post-surgical extirpation of the right multicystic dysplastic kidney, and solitary kidney (20 CFR 416.920(c)).  At step three, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).   At step four, after careful consideration of the entire record,  the ALJ found that the plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except he is limited to simple work in a setting with a low level of interaction with coworkers,

11

supervisors, and the general public.  At step five, considering the plaintiff's age, education, work experience and RFC, the ALJ determined that there are jobs that exist in significant numbers in the national economy that plaintiff can perform (20 CFR 416.969 and 416.969(a)), and accordingly, found that plaintiff has not been under a disability, as defined in the Social Security Act, since September 22, 2008, the date that the application was filed (20 CFR 416.920(g)).

Bolstering the ALJ's determination, the record reveals that plaintiff's VESID evaluation revealed, inter alia, that plaintiff's reading ability was at an advanced level, at a grade level of 12.9+.  His math computations were at grade level 8.6, and applied math at a grade level of 8.8.  Plaintiff is computer literate, with a knowledge of Microsoft Word, the internet, and email (Tr. 259), and his grandmother stated that he spent much of his time on the internet.  One of the occupations VESID suggested to him was that of a data entry clerk, and plaintiff chose a work goal of supported employment as a data entry clerk. Tr. 265, 268. Plaintiff had no physical limitations due to his kidney disease, although plaintiff's grandmother stated that he does have pain due to lifting. Tr. 267.  The ALJ took that fact into consideration and stated that "[a] reduction to exertionally light work has been made through full consideration of his medical history and having only one kidney." Tr. 14.

The ALJ also considered plaintiff's mental impairments, finding that plaintiff had "mild limitations in activities of daily living.  He also has moderate limits in social functioning, and those limitations would require him to work at an occupation with a low level of contact with coworkers, supervisors and the general public.  The claimant has moderate limitations in concentration persistence and pace, and those limitations would restrict him to simple work." Tr. 14.  The court notes that on August 15, 2008, plaintiff self-reported anxiousness and that he continued to feel judged by others.  Plaintiff also reported "societal anxiety and hypochondriacal anxiety," specifically, that he experiences fears and anxiousness with fatal illness and expresses embarrassment about being fearful of ailment. Tr. 243.

At plaintiff's hearing, the ALJ first asked the VE to indicate any point where her testimony conflicted with the U.S. Department of Labor Dictionary of Occupational Titles ("DOT").  The VE did not indicate that her testimony departed from the information included in the DOT. Tr. 45–46. In response to the ALJ's hypothetical question, set forth below, the VE testified that such a hypothetical person could perform the job of assembler (DOT No. 706.687-010). Tr. 46.  The DOT lists this job as exertionally light, with a specific vocational preparation

("SVP")[2] of 2. The ALJ asked the VE to assume a hypothetical person between the ages of 19 and 21, with the same education level as plaintiff. Tr. 46. This person was limited to simple work and had the ability to lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently. Id. This person could stand, walk, and sit six hours in a workday with normal breaks. Id. Additionally, the hypothetical person should work in a setting with a low level of interaction with coworkers, supervisors, and the general public. The VE stated that the individual would be able to do the job of an assembler (DOT No. 706.687-010). As confirmed by the VE, there were 499,870 positions available nationally and 6,520 in the State of Arizona, and 50 jobs in the Lake Havasu area where plaintiff resided. Tr. 46. The VE further testified that the hypothetical person could work as a mail clerk (DOT No. 209.687-026), which was a light, unskilled position with an SVP of 2, with 137,350 positions available nationally and 2,660 in Arizona. Tr. 46–47. Finally, the VE testified that the hypothetical person could work as a messenger (DOT No. 239.767-010), which was a light, unskilled job with an SVP of 2. Id. There were 96,110 jobs existing nationally and 1,280 positions in

---

[2] Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job–worker situation. DOT, (4th ed. 1991) p. 1009. An SVP of 2 means anything beyond a short demonstration, up to and including one month. Id.

Arizona. Id.   Plaintiff's attorney declined the opportunity to question the

vocational expert.  Tr. 48.  The VE also testified that the hypothetical person could

work as a housekeeper, cleaner (DOT No. 323.687-014). Tr. 47.  This was a

light-exertion job with an SVP of 2. Id.   The VE testified that there were 917,120

positions available nationally and 19,310 positions in Arizona. Id.

     Plaintiff now argues that the ALJ erred by determining that the vocational

expert's testimony is consistent with the information in the DOT , and the majority

of his brief consists of a reproduction of the jobs mentioned set forth supra by the

VE, and the respective requirements.  Plaintiff argues that he can perform  no

higher than 01 level reasoning development. Doc. No. 11, p.5.  Plaintiff cites SSR

00-4p as providing that "[w]hen vocational evidence provided by a VE or VS is

not consistent  with information in the DOT, the adjudicator must resolve this

conflict before relying on the VE or VS evidence to support a determination or

decision that the individual is or is not disabled." Doc. No. 11, p. 5.  Plaintiff

argues that "[t]his conflict was not resolved.  The decision of the ALJ should be

reversed or remanded." Id.

     The Commissioner  asserts that the claim is without merit, but assuming

arguendo that there was a conflict between the VE's testimony and the DOT,

failing to resolve it was harmless error.  Agreeing that SSR 00-4p requires that any

conflict between a VE's testimony and the DOT needs to be resolved, the

Commissioner notes that although plaintiff was limited to, inter alia, simple work,

a limitation to simple work does not preclude a job that has a reasoning

development level of 2 or 3, such as the jobs proffered by the VE as messenger,

assembler, and mail clerk.  As set forth above, plaintiff's VESID counseling

indicated that plaintiff tested beyond a twelfth-grade level in reading.  Plaintiff

was found able to follow written instructions; interpret charts, graphs and

applications; comprehend advanced information; and make inferences.  Tr. 260.

Plaintiff scored high average on a test of oral direction. Tr. 261.  Plaintiff had a

strong interest in history and obtained grades of A and A- in community college

history classes. Tr. 263.  VESID suggested that plaintiff seek a job as data entry

clerk (DOT No. 203.582-054), a job that carries a reasoning development score of

3, and, as stated above, the record shows that data entry clerk was the job plaintiff

chose as his goal.

   "Neither the DOT nor the VE or VS evidence automatically 'trumps' when

there is a conflict. SSR 00-4p. The DOT may be used for taking 'administrative

notice of reliable job information.' 20 C.F.R. § 404.1566(d)(1).  However, the

DOT is not the sole source of admissible occupational evidence nor is it entirely

comprehensive.  The ALJ is not required to rely on classifications in the DOT and

may instead rely on a VE's testimony, *even if it is inconsistent.*" <u>Ramos v. Astrue</u>,

2010 WL 2854450 at * 5 (W.D.N.Y. 2010) (internal citations omitted) (emphasis

added).

     Accordingly, the court finds that plaintiff's argument that the ALJ erred in

reconciling the VE's testimony is unavailing.  The court finds that substantial

evidence in the record affirms the ALJ's finding of no disability.  The court also

finds that the ALJ followed the appropriate guidelines in reaching his decision.

## III.   Conclusion

     For the reasons set forth above, the court hereby DENIES plaintiff's motion

for judgment on the pleadings (Doc. No. 11), and hereby GRANTS the

Commissioner's motion on the pleadings (Doc. No. 12).  The Clerk is instructed to

close this case.

     SO ORDERED.

June 6, 2012

_____

Neal P. McCurn
Senior  U.S. District Judge